IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Artie Burns, | ) | Case No. 8:13-cv-03392-BHH-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| D.Bush, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 12.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on December 2, 2013.[1] [Doc. 1.] On March 12, 2014, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 12, 13.] On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 14.] Petitioner filed a response in opposition on May 29, 2014. [Doc. 19.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on December 2, 2013. [Doc. 1-14 (Petition signed by Petitioner on December 2, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Dillon County. [Doc. 1 at 1.] Petitioner was indicted in May 2006 for trafficking 100 grams or more of cocaine but less than 200 grams.[2] [App. 523–524.[3]] On October 17, 2006, represented by David Watson ("Watson"), Petitioner proceeded to trial. [App. 1–421.] On October 19, the jury returned a verdict of guilty. [App. 369.] Petitioner was sentenced to 25 years imprisonment and a $50,000 fine. [App. 419.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On June 27, 2008, Wanda H. Carter ("Carter") of the South Carolina Office of Appellate Defense filed a brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issues:

> (1) The trial judge erred in denying appellant's motion to suppress a video tape of the traffic stop and the drugs seized threafter because the continued extended detention of the appellant by police beyond the initial stop constituted an illegal search and seizure in violation of the Fourth Amendment.

---

[2]Petitioner's indictment lists trafficking 100 grams or more cocaine but less than 200 grams in its heading, but references possession with intent to distribute in the body of the document. [App. 523–524.] During pre-trial proceedings, Judge James E. Lockemy ruled that the discrepancy did not prevent Petitioner from receiving proper notice of the charge of trafficking and that Judge Lockemy would allow the indictment to be amended. [Doc. 13-2 at 5.] The issues surrounding the indictment are the subject of Petitioner's Ground Four.

[3]The Appendix can be found at Docket Entry Numbers 13-6 through 13-9.

> (2) The trial judge erred in allowing an improper amendment of the indictment issued against appellant in the case.

[Doc. 13-3 at 4, 12.]  The State filed a response brief on June 30, 2008.  [Doc. 13-4.]  On June 1, 2009, the South Carolina Court of Appeals affirmed the conviction.  [Supp. App. 1–2.[4]]  Remittitur was issued on June 17, 2009.  [Doc. 13-5.]

**PCR Proceedings**

On October 1, 2009, Petitioner filed a pro se application for post-conviction relief ("PCR") in which he alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

Ineffective assistan[ce] of counsel[:]

> (1)    For advising client to go to trial in a felony case with [a] 10 man jury w[h]ere defendant is facing 25 years, violating South Carolina Article V § 22.  The Petit Jury of the Circuit Court shall consist of tweve members and the USCA Sixth and Fourteenth 12 Person Jury for all felony prosecution.
>
> (2)    Failure to have indictment for trafficking [quashed]. Indictment failed to contain all the elements of crime charged and defendant was unable to defend against the charge, violating § 17-19-20 South Carolina Code of Law.  USCA Fi[f]th and Fourteenth.
>
> (3)    Failure to have Amended Indictment [quashed] on the [ground] that it violated the defendant['s] Fifth and Fourteenth Amendment [rights] when the trial court allowed defendant['s] indictment to be amended which resulted in a constructive amendment.  "The aforementioned jury charge clearly showed that the trial court has just successfully manufactured (necessary elements) of trafficking cocaine into defendant's

---

[4]The Supplemental Appendix can be found at Docket Entry Number 13-10.

3

indictment of (possession with intent to distribute cocaine) changing the nature of the crime charged and increasing the penalty without authority of law.["] in violations of Article 1 and 11 of South Carolina Constitution.

(4)     Failure to [have] Indictment [quashed]
Indictment failed to provide defendant with sufficient notice of trafficking charge.  Although it is listed in the caption of the indictment: clearly the caption of the indictment is not part of the grand jury findings.  The caption of an indictment is not part of it and the designation therein of the offense sought to be changed can neither enlarge nor d[i]minish the offense charged in the body of the instrument.  Reliance upon caption to "bolster" a fatally defective indictment is therefore contrary to constitutional mandate that for most offenses a defendant may only be required to anser an indictment of the Grand Jury.  S.C. constitution Art. I § 11 (Holding the State may not support a conviction for an offense intended to be charged by relying upon a caption to exclusion of the language contained in the body of the indictment).  The defendant's Indictment says trafficking in the caption.   The body says Possession with intent to Distribute Cocaine.  That's the finding of the Grand Jury.

(5)     Failure to challenge the legitimacy of the traffic stop.
The defendant was stop[ped] for "some what swerv[ing.]"  *U.S. v. Gregory* 79 F.3d 973, 978 (10th Cir. 1996) holding that an isolated incident of a vehicle crossing into emergency lane of a roadway does not violated state statute's requirement that vehicles remain entirely in a single lane "as nearly as practic[able.]"  *See U.S. v. Guevave-Martinez* 2000 WL 33595241 at 2 (D Neb May 26, 2000.  "Somewhat swerved did not [ . . . ] violate S.C. State statute 56-5-1900.["]   Driving on roadways laned traffic a vehicle shall be driven as "nearly as practicable" entirely within a single lane and shall not be moved from the lane until the driver has first ac[c]ertained that such movement can be made with "safety."  As in *U.S. v. Gregory* ([t]he officer never administered sobriety test.  Failure to do so indicated lack of suspicion of intoxication and officer did not testify to any factors supporting reasonable suspicion that

4

defendant['s] driving constituted threat of injury to himself or others, the stop did not meet reasonable test of the Fourth Amendment and South Carolina Art. 1 and 10 of their Constitution.

(6)    Failure to object to court[']s ruling that Solicitor may as[k] question from a criminal history in front of jury that's not client[']s. Trial court committed pl[ain] error in ruling the State could [ask questions from an] unknow[n person's] history criminal history of bad acts, depriving the defendant [of] the right to testify, violating the Fourteenth Amendment of the USAC.

(7)    Failure to investigate criminal history of unknown person. If counsel would have investigated the report he would have found out that said person was arrested on 3-4-06 in Miami, Florida, when Defendant was in jail in Dillon, South Carolina at that time. Depriving defendant the right to testify, violating the Fourteenth Amen. South Carolina Constitution Art. I § 14.

(8)    Failure to challenge defendant's consent to search following an illegal stop. The court's in *U.S. v. Gregory* 79 F.3d 973, 978 (10th Cir. 1996) and in *State v, Pichardo* 367 S.C. 84 623 S.E.2d 840 (Ct. App. 2005) says "that an encounter initiated by a traffic stop may not be deemed consensual unless the drivers documents ha[ve] been returned to him.["] *United State[s] v. Gonzalez-Lerma* 14 F.3d 1479, 1483 (10th Cir.). Judge Breeden ruled the stop consensual. The officer states in trial that he did not return [any] paperwork to defendants. The same courts [say] however while returning a driver[']s documents is necessary to show that the police-citizen encounter was consensual it may not always be sufficient. *U.S. v. McSwain*, 29 F.3d 558, 563 (10th Cir. 1994) we look at such factors as whether the officer informed the defendant that he was "free to leave" the scene or that he could refuse to give consent. *McSwain* 29 F.3d at 563/ Issuing Miranda warning telling defendant he is free to leave and advising defendant of right to refuse consent are all factors that may "satisfy" the requirement of intervening circumstances. We find a lack of attenuation sufficient to make defendant's subsequent consent voluntary. The only purpose for

5

the officer to detain the defendants was to embark upon an improper "fishing expedition in the hope that something might turn up violating he fourth Amendment which protects the security of one[']s privacy against arbitrary intrusion by the Police" *Schenecklott v. Bustamante* 412 U.S. 2d 242, 93 S. Ct. 2041, 2055 36 Led 854 (1972).

(9)    Failure to move for the evidence seized to be suppress[ed] on the grounds of an illegal stop and an invalid consent in violation of the Fourth Amendment.

(10)    Failure to [ . . . ] petition for Judge to be removed[d] or to remove himself.    The Judge stated d[ur]ing the suppression motions d[ur]ing pretrial, ["]I worried when I left whether or not I was going to get pulled going back to North Myrtle Beach because I ruled against the officers in that.["]    That may have prejudice[d] the defendant    and    violated    defendant's    Fourteenth Amendment [rights] to Due Process and a fair trial.

(11)    Failure to object to the use of an incident report that was not filed by the officer.    If [an] officer use[s] false evidence    including    false    testimony    to    secure    a conviction the defendant's due Process rights are violated. *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001).

(12)    Failure to investigate and call witnesses to testify [on the] behalf of defendant.    Counsel fail[ed] to call rental agent or the person who rented the car, violating USAC Sixth and Fourteenth Amendment.

(13)    Failure to move for dismissal on the grounds of insufficient evidence or no evidence.    After officer testimony.    The officer testified that the evidence in Court is not [the] evidence he remove[d] from the car after the stop.

(14)    Failure to object to the Jury instruction of the constructive language of trafficking to the Indictment. The Solic[i]tor charged and defined the offense to the Jury as follow[s:] Knowingly sells or who manufactures, delivers, or brings into the state or who is Knowingly in Possession of 10 Grams or more of cocaine or any

6

mixture containing cocaine is guilty of [a] felony which is known as (trafficking in cocaine.)  The only thing to change on the indictment is Possession with the intent to trafficking.  The Grand Jury of Dillon County Present upon their Oath: unlawfully and knowingly transport and or deliver and was knowingly in possession of more than 100 Grams but less than 200 Grams of cocaine th[u]s constituting the crime of possession with intent to distribute cocaine under Provision of Sec. 44-53-370 et seq Code of South Carolina.

(15)    Failure to mo[ve] to set aside the verdict based on the insufficiency of the evidence.

(16)    Failure to move for a directed verdict on the grounds of insufficient Evidence or no Evidence.  The officer the state key witness testified Three times.  That the evidence in the court d[ur]ing trial that came back from SLED was not the evidence he remove[d] from the car.  The Judge ask[ed] could he identify the evidence.  He says no.

(17)    Failure to make any post-trial motions.

(18)    Failure to move on the pre-trial motion made before the Honorable James E. Lockemy to suppress all evidence not given to the defense Ten days before Trial.  Suppress[ion] of the copy of the video tape of the stop, Copy of SLED drug Analysis request and SLED Forensic Services Laboratory report Date August 24, 2006 and all Drug Evidence.  The State was in violation of Rule 5 and *Brady v. Maryland*.

(19)    Failure to mo[ve] for a continuance to keep trial in front of the Honorable James E. Lockemy, who started the Pre-trial hearing on August 28, 2006 without notice that he would not continue the trial.

Ineffective Appellate Counsel[:]

(1)    Failure to raise and Preserve all meritorious issues.

(2)    Failure to raise chain of custody.  The chain of custody was not a complete chain [the] state failed to prove sufficient chain of custody and thus the cocaine should

7

not have been admitted into evidence. Initial control to it's final analysis must be established as far as practicable. *State v. Carter*, 344 S.C. 419 344 S.E.2d 835 (2001) 374 S.C. 1 *State v. Sweet* (April 18, 2007). If a substance has Passed through multiple custodians it must not be left to conject[ure] concerning who had the evidence and what was done with it between the taking and the analysis. *State v. Joseph*, 328 S.C. 352, 491 S.E.2d 275 (Ct. App. 1997). The officer testified to sending two bags to SLED for testing. Ms. Kokila Stanley of SLED testified that she tested five bags that she repackaged into three bag[s]. Ms. Kokila Stanley states that someone else who did not testify or write a statement on what she had or [saw] when she got the evidence. The State could have taken a sworn statement from the Forensic Technici[a]n Amy Stevens and Produced the statement at trial under the Procedures of Rule (6)(b) SCRCrimP *See Chisolm* 355 S.C. at 180 584 S.E.2d at 404 (Finding drug evidence inadmissible where it would not have been impracticable for the state to have submitted sworn statements from the custodians under . . . Rule 6(b) SCRCrimP) *see State v. Joseph* 491 S.E.2d 275 (S.C. App. 1997). The state simply did not Present Proof of the chain of custody as far [as] practicable [and] for these reasons the trial Judge erred in admitting the Drugs as evidence. D[ue] to the credibility and admissibility. *State v. Carter* 344 S.C. 419, 544 S.E.2d 835 (2001). Where there is a weak link in the chain of custody it's about credibility. In appl[y]ing this Rule (6)(b) we have found evidence Inadmissible only where there is a missing link in the chain of custody. Because it fails to establish the identity of each custodian and the manner of handling of the evidence, the Drugs should not have been enter[ed] into Evidence. Violating Fifth and Fourteenth Amen.

(3)     Failure to raise the issue of Direct[ed] Verdict. The trial court in a directed verdict motion is concerned with the existence or nonexistence of evidence, not with it's weight. *State v. Cherry*, 361 S.C. 588 594, 606 S.E.2d 478 (2004). Defense counsel move[d] for a directed verdict on the grounds of Insufficient evidence and non existence of evidence. The trial Judge himself ask[ed] the state['s] top witness can he identify the evidence as

8

being the evidence that he remove[d] from the rental car on Feb. 28, 2006. Officer [L]ane testified that it was not the evidence he remove[d] from the car, that was tested by SLED. That was found to be cocaine. As the Judge gives the Jury th[eir] instructions that they are the "sole" and exclusive Judge of the facts of the case. The Court is the sole and exclusive Judge of the law. By the Judge asking the officer to identify the evidence[, h]e also became a fact finder of the case and by asking and knowing that the evidence was not the evidence the officer remove[d] from the car, the Judge should have granted a direct[ed] verdict Because of nonexisting and insufficient evidence. Court of Appeals may only reverse the denial of a motion for directed verdict if no evidence supports the trial court's ruling.

(4)    Failure to order all Trial Transcript. By not having the Pre-trial transcript that the state use[d] against defendant, Counsel was not able to put up an effective case d[ur]ing the appeals stage violating defendant[']s right to Due Process and a fair trial. Fourteenth Amendment if the U.S.C.A.

[Doc. 13-11 at 8–17 (citations omitted).] The State filed a return on March 31, 2010. [App. 429–433.] Petitioner filed a pro se amended PCR application on July 16, 2010, in which he alleged the following grounds for relief, quoted substantially verbatim:

Issues to be added:

(1)    Trial counsel was ineffective for fail[ing] to object to the chain of custody on the grounds [that] the chain is not a complete chain.

(2)    Trial court lacked subject matter jurisdiction to convict or sentence defendant.

(3)    Prosecutorial misconduct.

(4)    Appellate counsel was ineffective for fail[ing] to challenge the appellate court[']s ruling.

9

[Doc. 29-1 at 2.[5]]  In his amended PCR application, Petitioner also requested numerous issues be separated.  [*Id.* at 2–3.]

An evidentiary hearing was held on September 15, 2010, at which Petitioner was represented by Bobby G. Frederick.  [App. 435–510.]  At the conclusion of the hearing, the PCR court denied relief with respect to the subject matter jurisdiction and ten-member jury issues.  [App. 507–510.]  It took the remaining issues under advisement.  [*Id.*]  On December 22, 2010, the PCR court issued an order denying and dismissing the PCR application with prejudice.  [App. 512–521.]

A notice of appeal was timely filed.  On August 30, 2011, Carter filed a *Johnson* petition[6] on Petitioner's behalf for writ of certiorari in the Supreme Court of South Carolina.  [Doc. 13-12.]  The petition asserted the following as the sole issue presented:

> Trial counsel erred in allowing petitioner to be tried by a ten-member jury because there was no proper waiver by petitioner of his right to a full twelve-member jury panel in this case.

[*Id.* at 3.]  At the same time she filed the *Johnson* petition, Carter submitted a petition to be relieved as counsel.  [*Id.* at 9.]  On August 31, 2011, the Clerk of the Supreme Court of South Carolina advised Petitioner of his right to file a response.  [Doc. 13-14.]  Petitioner filed a pro se response on October 14, 2011, presenting the following issues, quoted substantially verbatim:

---

[5]At the direction of the Court, Respondent submitted the amended PCR application as an additional attachment on November 21, 2014.  [Doc. 29.]

[6]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*,  364 S.E.2d 201 (S.C. 1988).

(1) Did the PCR Judge err[. . .] in ruling that the trial court has subject matter jurisdiction after the amending of the indictment from the lesser to the greater offense without resubmitting [the] indictment to the Grand Jury.

\*\*\*

Facts: Petitioner was indicted for Possession with the intent to Distribute and was convicted and sentence[d] for trafficking cocaine without an indictment for trafficking. Trial court allowed Petitioner to be convicted and sentence[d] on an indictment that was change[d] by word of mouth and not by a Grand Jury by law which changed the Nature of the offen[s]e from the lesser to the greater. Trafficking is an offense with two parts one is weight: two elements. A Person cannot be convicted on the weight alone after the weight. The State wanted trafficking [and] the Dillon County Grand Jury return[ed] with the charge of Possession with intent to Distribute cocaine which is the lesser charge. It's not in the powers if the courts to change the indictment to what the State wants. *See* pre-trial transcripts before Judge Lockemy. The State talks about the front and top of the indictment saying trafficking.

\*\*\*

(2) Did the PCR Judge err[ . . . ] in ruling that [ . . . ] the Prosecutors did not commit Prosecutorial misconduct and malicious Prosecution at different stages in Petitioner's case.

The Prosecution Procured [a] fraudulent indictment base[d] on the Presentation of evidence and skillfully misleading the Grand Jury and the courts by Presenting false evidence on Petitioner's indictment No. 06-GS-17-0413. Petitioner's indictment was true billed four days before said Dillon County Grand Jury convened.

Facts: Petitioner was indicted for Possession with Intent to Distribute Cocaine by the Dillon County Grand Jury at the May 2006 term of Dillon County General Sessions Court. However, under S.C. Code § 14-5-650 the S.C. legislature has enacted the following schedule for Dillon County: second Monday in March, the first Monday in June and the fourth Monday in September. Sham legal process that failed to confer subject matter juridiction upon trial court to convict and sentence Petitioner. *See* indictment.

11

Fact: Prosecutor got fraudulent true billed indictment with no evidence. The evidence was at S.L.E.D. and had not been tested at [the] time [the] Prosecutor got [the] fraudulent indictment. The fraudulent indictment was true billed for May 2006. S.L.E.D. did not test the evidence until August 2006. *See* forensic report from Drug law. Part of brady Rule 5.

Fact: Prosecutor allowed Officer Lane to use a[n] incident report on the stand in front of the Jury to refresh his mind. The incident report was not filed by Officer Lane and no one knows whi filed the report. Violation of the 6 amendment. Right.

Fact: Prosecutor used unknown criminal history to keep Petitioner from testifying. Prosecution knew criminal histroy wasn't Petitioner's by way of name on criminal history and on the last page of the report said person was arres[t]ed in Miami-Dade County at [the] time Petitioner was in jail in Dillon County S.C. *See* criminal history report part of brady.

Fact: Prosecutor made improper comments in presen[ce] of Jury. "We have over 130 grams of this poison off the streets that will not enter into the blood stream of our children." The Prosecutor knows by way of Chief Witness Officer Lane's testimony that the evidence the State presented is not the evidence he removed from Petitioner[']s car. Prosecutor was inflaming the passion of the Jury to get a wrongful conviction and prosecuted the Petitioner maliciously.

\*\*\*

(3) Did PCR Judge err[ . . . ] in ruling the trial counsel was not ineffective for not objecting to a defective chain of custody.

Petitioner argues that trial court err[ed] in admitting evidence of drugs where the chain of custody was defective and the State['s] Chief witness Officer Lane testified that the evidence the State was presenting at trial in court is not the evidence he removed from Petitioner's car.

Fact: Trial counsel should have objected on the Grounds [that] the State did not reveal an adequate chain of custody to satisfy the admissibility and credibility requirements. The State[']s Chief witness state[d] at trial he cannot identify the evidence the State presented at trial as being the evidence he removed

from Petitioner's car.  Trial counsel clearly shows the evidence never made it to S.L.E.D.

> Mr. Watson: How many bags does it say.  Describe substance or container with sufficient particularity to describe it or to distinguish it.  I want you to read for this Jury with particularity what Mr. Busey said the containers were.  Exactly what he wrote.

> Ms. Kukile Stanley: Two clear plastic bags.

> Mr. Watson: How many bags were delivered to S.L.E.D. by Mr. Busey?

> Ms. Kukila Stanley: According to my records there were five bags.

By counsel not allowing this chain of custody form into evidence shows counsel was ineffective.  The State ask[ed] for it to put into evidence.  S.L.E.D. drug analyst Kukila Stanley testif[ied] to what she tested, which was different from what Officer Lane says he sent to S.L.E.D. to be tested.  Kukila Stanely also testified that another technician by the name of Amy Stevens also handle[d] the evidence.  The State did not have her at trial testify to what she had nor did the State have a written statement from Amy Stevens.

\*\*\*

(4) Did PCR Judge err[ . . . ] in ruling trial counsel was not ineffective for advising Petitioner to go to trial with a ten (10) person jury in a felony case facing 25 years.

\*\*\*

Fact: In Petitioner['] s case the[re were] never twelve jurors.  Counsel should not have agreed with the State and the Judge and should not [have] advised Petitioner to go to trial in violat[ion of] South Carolina law and U.S.C.A. six and fourteenth amendment.

(5) Did PCR Judge err[ . . . ] in ruling trial counsel was not ineffective for not moving for trial Judge to recuse himself from Petitioner's trial.

13

Fact: Trial Judge state[d] the following in discussing the ruling on the suppression of drugs in a previous case d[ur]ing the suppression hearing in Petitioner's case. "And I worried when I left whether or not I was going to get pulled going back to North Myrtle Beach because I ruled against the officers in that." This statement made by the Judge shows fear of the Police and was improper and prejudic[ial] to Petitioner and violated Petitioner's fourteenth amendment rights and rule 501 S.C.R.C.P.

***

Fact: If not for the Judge's fear of the Police he would have suppressed the evidence in this case giving Petitioner a fair trial. With a New Judge Petitioner would have had a fair trial under the fourteenth amendment.

(6) Did PCR Judge err[ . . . ] in ruling counsel was not ineffective for agreeing with trial court Petitioner can be asked question[s] from a criminal history that's not Petitioner's in front of the Jury if Petitioner takes the stand and criminal history can't be put into evidence so Jury can't see it.

Fact: Counsel should have objected to the use of a criminal history that ha[d] another persons name on it and said person was arrested in Miami-Dade County at the time Petitioner was in jail in Dillon County South Carolina, the said criminal history reflects this. This was done to violate Petitioner's fourteenth amendment rights S.C. Const. Art I § 14.

(7) Did the PCR Judge err[ . . . ] in ruling trial counsel was not ineffective for not challenging the legitimacy of the traffic stop/

Fact: Petitioner was stop[ped because he] "somewhat swerved," which does not break [a] state's law not statute. The state did not meet the reasonable test of the fourth amendment. Petitioner is contesting the lack of probable cause of the initial stop and arrest of Petitioner for "somewhat swerve." Officer Lane testified that he stopped Petitioner for "somewhat swerv[ing]" (Note Officer Lane was reading from a report he did not file. No one knows who filed it.) Officer Lane then testified that Petitioner did not "somewhat swerved." That the car actually entered the other lane and then went back into the outside lane. Where was the probable cause to stop?

14

*** 

(8) Did PCR Judge err[ . . . ] in ruling trial counsel was not ineffective for not asking for a directed verdict on the grounds of no evidence or insufficient evidence.

Fact: The State Chief witness testified that the evidence the State presented in Court at trial was not the evidence he removed from Petitioner['s] car on Feb. 28, 2006.  This is the Court asking the witness can he identify the evidence.

***

Fact: Petitioner's lawyer Mr. Watson says d[ur]ing the motion, cocaine was found.  This statement was prejudic[ial].  Counsel was ineffective and violated Petitioner['s] six and fourteenth amendment.  Throughout the trial[,] counsel talks about drugs that was found. By way of evidence and testimony th[ere] is no evidence of drugs in the Court room that was removed from Petitioner's car by Officer Lane.

[Doc. 13-15 at 1–24 (citations omitted).]   The court denied the petition and granted counsel's request to withdraw on June 4, 2013 [Doc. 13-16] and remitted the matter to the lower court on June 21, 2013 [Doc. 13-17].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on December 2, 2013, in which he alleges that he was denied effective assistance of counsel at trial and on.[7]   [Doc. 1.] Additionally, Petitioner filed an attachment with his Petition.[8]  In that attachment, Petitioner raises nine issues, quoted substantially verbatim:

---

[7]In each space for Petitioner to fill in his ground for relief, Petitioner states "ineffective assistance of counsel- see attachment" or some variation thereof. [*See* Doc. 1.]

[8]The attachment to the Petition can be found at Docket Entry Number 1-2 on pages 22–31.

15

Ground One:            Petitioner was denied effective assistance of counsel at trial

Supporting Facts:      Trial Counsel was ineffective for not asking for a Directed Verdict on the Grounds of no evidence or insufficient evidence.    Trial Counsel was only concern[ed] about Constructive Possession and Dominion and Control.    Not at any time during the argument did Counsel nor Co-Counsel argue the fact [that] the State did not produce the evidence at trial that David Lane allege[d] he removed from Petitioner's car on February 28, 2006.  David Lane's testi[fied] that the evidence the State presented at court at trial is not the evidence he removed from Petitioner car.    Trial Counsel's only argument should have been [that] the State did not produce [any] evidence of the crime of trafficking to sustain the conviction and the evidence should not have been admitted.  If the Court finds that trial Counsel never properly raised and argued the issue, it should also find that such failure amounted to ineffective assistance of Counsel.

Ground Two:            Petitioner was denied effective assistance of Counsel at trial

Supporting Facts:      Trial Counsel was ineffective for advising Petitioner to go to trial with a ten (10) Person Jury.  Petitioner was tried [and] convicted by a 10 member jury.  Counsel should have objected and not have had Petitioner to agree with the State and the Court without a proper waiver of his rights and Counsel was ineffective for not safe guarding Petitioner's rights to a full twelve member Jury.  Petitioner did not and was not allowed to seat a full twelve member Jury Panel.  If the Court finds that trial Counsel erred in advising Petitioners to go to trial without a Proper waiver and against S.C.R. CrimP Rule 14, it should also find that such error amounted to ineffective assistance of Counsel and a miscarriage of Justice

Ground Three:          Petitioner was denied effective assistance of Counsel at trial.

Supporting Facts:    Trial Counsel was ineffective for not moving for trial Judge to recuse himself from Petitioner's trial. D[ur]ing the suppression hearing[,] trial Judge state[d] the following in discussing his ruling against the Police in a Previous Case.  "And I worried when I left whether or not I was going to get pulled going back to North Myrtle [B]each because I ruled against the officers in that."  The statement showed fear of the Police and there [were] uniform officers sitting in the [c]ourt room and it showed [p]rejudice that Petitioner was not going to get a fair trial.  The statement was improper.  If the Court finds that trial Counsel err[ed] in not moving for trial Judge [to] recuse [himself,] it should also find that such error amounted to ineffective assistance of Counsel.

Ground Four:    Trial Court lacked Subject Matter Jurisdiction.

Supporting Facts:    Trial Counsel lacked subject matter Jurisdiction to convict and sentence Petitioners for trafficking without an indictment for trafficking.  Petitioner was indicted for Possession with intent to distribute cocaine  The body of the indictment says the Grand Jury indicted Petitioner for Possession with intent to distribute cocaine.  The Prosecutor says because of the weight alleged in the indictment it[']s trafficking.  The trial Judge, because of the ruling of the pre-trial Judge[,] allowed the State to try and convict and sentence Petitioner for trafficking without an indictment for trafficking cocaine.  It was Prejudice to Petitioner and was a miscarriage of Justice.  It changed the nature of the crime charged and increased the penalty.  It was no longer the indictment that was passed on by the Grand Jury.  If this Court finds that [the] trial Court lacked subject matter Jurisdiction to convict and sentence Petitioner, it should find Petitioner's conviction and sentence invalid.

Ground Five:    Petitioner was denied effective assistance of counsel at trial

Supporting Facts:    Trial Counsel was ineffective for not objecting to a defective chain of custody.  Trial Counsel should have objected on the Grounds [that] the State did not reveal an adequate chain of custody to satisfy the admissibility and credibility requirements.  Trial Counsel objected to the evidence [itself].  Officer David Lane failed to comply

17

with the Dept. Of Public Safety directive on evidence. (1) He failed to make a chain of custody form for the evidence he said he tested d[ur]ing a field test after he altered the evidence for the field test and the State failed to produce the resu[l]ts to show probable cause and that the evidence had cocaine in it to arrest Petitioner. (2) There is no chain of custody form from the police secured repository showing when and what time he turned [in] the evidence and to who[m]. (3) The evidence was not transported to (S.L.E.D.) South Carolina Law enforcement division [within] 72 hours. (4) David Lane kept the evidence for 43 days in his personal belongings. If the Court finds that trial Counsel failed to object to the issue properly[,] it should find that such failure amounted to ineffective assistance of Counsel.

Ground Six:          Petitioner was denied effective assistance of Counsel at trial

Supporting Facts:    Trial Counsel was ineffective for fail[ure] to object to the court ruling the Solicitor can ask questions from a criminal history in front of the Jury that[']s not Petitioner[']s if Petitioner takes the stand. Trial Counsel should have objected and not agreed with the State and the Court that Petitioner could be asked questions from another person[']s criminal history and the criminal history would not be put into evidence so the Jury would not be able to see the other person[']s name on it. The report also shows that the person went to jail in Miami-dade County at the time Petitioner was in jail in South Carolina showing that Petitioner is not that person. The ruling Prejudiced Petitioner and would have Prejudiced Petitioner in front of the Jury. The ruling kept Petitioner from testifying against the officer who was the sole witness. If the Court finds that trial Counsel did not properly object and was in error for agreeing with the State and the Court, it should also find that such failure amounted to ineffective assistance of Counsel.

Grounds Seven:       Petitioner was denied effective assistance of Counsel at trial

Supporting Facts:    Trial Counsel was ineffective for fail[ing] to challenge the legitimacy of the traffic stop. Trial Counsel should

18

have challenged the traffic stop.  David Lane testified the reason he stopped Petitioner was because Petitioner "some what swerved" then he state[d] the vehicle actually enter[ed] into the other lane and then back into the outside lane.  When a vehicle "some what swerved" the vehicle will never enter the other lane. Officer David Lane doesn't know what he had observed by way of his testimony shows lack of Probable Cause to stop Petitioner[']s car.  Officer David Lane did not testify to any factors supporting reasonable suspicion that Petitioner[']s driving constituted theat of injury to himself or others.  If the Court finds that trial Counsel should have raised the issue. It should also find that such failure amounted to ineffective assistance of Counsel.

Ground Eight:     Prosecutorial Misconduct

Supporting Facts:     Prosecutor used false evidence [and] false criminal history to keep Petitioner from taking the stand. Prosecutor did not turn over evidence in a timely manner.  Prosecutor made Improper statements he knows that are not true in front of [the] Jury.  Officer David Lane testified the evidence was not the evidence he removed from Petitioner[']s car that the state presented at trial.  The Prosecutor used the evidence to a get a wrongful conviction and to inflame the passion of the Jury.

Ground Nine:     Petitioner was denied effective Appellate Counsel

Supporting Facts:     Appellate Counsel was ineffective for not raising the chain of custody issue on direct appeal.  Appellate Counsel should have raised the chain of custody because trial Counsel objected to it and there wasn't an adequate chain presented by the State.

[Doc. 1-2 at 22–31.]

As stated, on March 12, 2014, Respondent filed a motion for summary judgment.

[Doc. 12.]  On May 29, 2014, Petitioner filed a response in opposition.  [Doc. 19.]

Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe

his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).   Pro se pleadings are held to a less

stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under

this less stringent standard, however, the pro se petition still may be subject to summary

dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the petitioner could

prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court

may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411,

417–18 (7th Cir. 1993).   Nor should a court "conjure up questions never squarely

presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

> admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28

U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,*

134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas

corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also

be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).    Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or

23

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts,

26

the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

27

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

28

523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

### DISCUSSION

**Non-cognizable Claim**

Ground Four alleges a deficiency in the indictment and challenges state court jurisdiction.  However, federal habeas actions provide for review of solely federal law claims.  *See*, 28 U.S.C. § 2254(a) (federal court will review only petitions alleging violations of federal law).  Subject matter jurisdiction of a state court is a state law issue not cognizable in this federal habeas action.  *Estelle . McGuire*, 502 U.S. 62, 67–68 (1991) ("[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (holding that jurisdiction is a matter of state law).  Therefore, Petitioner has not presented challenges to his convictions which are actionable under 28 U.S.C. § 2254 and Ground Four should be dismissed.

**Procedurally Barred Claim**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds Five, Six, Eight, and Nine are procedurally barred.  [Doc. 13.]  Respondents also argue Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a

miscarriage of justice. [*Id.* at 15–16.] Petitioner appears to argue he can establish cause

for any procedurally barred claims of ineffective assistance of trial counsel under *Martinez*,

132 S.Ct. 1309.[10]  [Doc. 19.]  The Court agrees Ground Nine—ineffective assistance of

appellate counsel for failure to raise the chain of custody issue on direct appeal—is

procedurally barred because it was not raised to the Supreme Court of South Carolina in

Petitioner's petition for writ of certiorari [*see* Doc. 13-15].  Because this ground was not

fairly presented to the Supreme Court of South Carolina, it is procedurally barred from

federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501

U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would

be procedurally impossible to raise now, then it is procedurally barred from federal habeas

review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

    The existence of cause must ordinarily turn on whether the petitioner can show

some objective factor external to the defense impeded counsel's or the petitioner's efforts

to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488.  *But see Martinez*, 132

S.Ct. At 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings

*may* establish cause for a prisoner's procedural default of a claim of ineffective assistance

at trial." (emphasis added)).

     Here, as stated, Petitioner appears to argue he can establish cause for any

procedurally barred claims of ineffective assistance of trial counsel under *Martinez*. [Doc.

19.]  With respect to Ground Nine, however, *Martinez* does not apply to excuse the

_____

        [10]In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at
initial-review collateral proceedings may establish cause for a prisoner's procedural default
of a claim of ineffective assistance at trial."  132 S.Ct. at 1315.

procedural bar. Although the Court in *Martinez* did not distinguish between trial and appellate ineffective assistance of counsel, by its own language, *Martinez* is limited to claims asserting ineffective assistance of trial counsel, and other courts that have addressed the issue have held that *Martinez* does not apply to ineffective assistance of appellate counsel claims. *See Reed v. Stephens*, 739 F.3d 753, 778 n. 16 (5th Cir. 2014) (declining to consider ineffective assistance of appellate counsel under *Martinez.*)*; Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "[u]nder *Martinez's* unambiguous holding our previous understanding of *Coleman* in this regard is still the law-ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) (holding *Martinez* applies only to procedural default of a claim of ineffective assistance at trial, not to claim of ineffective assistance of appellate counsel). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) (holding that *Martinez* applies where the underlying ineffective assistance of counsel is by appellate counsel). Accordingly, because Ground Nine alleges ineffective assistance of Petitioner's appellate counsel, the Court disagrees with Brown's argument that this claim should be considered under *Martinez* and finds his objections to be without merit. Thus, this claim are procedurally barred from consideration by a federal habeas court and should be dismissed.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme

Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

> ### *Ground One: Trial counsel was ineffective for failing to move for directed verdict.*

In Ground One, Petitioner argues Watson was ineffective for failing to move for a directed verdict on the ground of insufficient evidence.  [Doc. 1-2 at 22.]  While Petitioner concedes that Watson moved for a directed verdict, he contends it was insufficient because it was made on the grounds of constructive possession and dominion and control.  [Doc. 19 at 13.]  Respondent argues the trial judge reasonably applied federal law to the facts of the case, and, subsequently, Petitioner is not entitled to any relief.  [Doc. 13 at 1, 18.]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[11]  *Richter*, 131 S.Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland

---

[11]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court evaluated Watson's performance under the standard set forth in *Strickland*. [App. 514–515.] The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel made an insufficient motion for directed verdict. At the conclusion of the State's case, counsel for the Applicant's co-defendant made a lengthy motion for directed verdict on behalf of both her client and the Applicant. Trial counsel adopted her argument. This Court finds the motion for directed verdict was sufficient. This Court also notes that the issues the Applicant complains were not more thoroughly addressed in the motion were before the trial judge for his consideration.

[App. 519 (citations omitted).] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court

34

precedent. Further, the record supports that the attorney for Petitioner's co-defendant made a lengthy directed verdict motion at trial on behalf of both defendants. [App. 309–317.] Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

> ### Ground Two: Trial counsel was ineffective for advising Petitioner to go to trial with a ten-member jury panel.

In Ground Two, Petitioner argues Watson was ineffective for advising Petitioner to go to trial with a ten-member jury panel when Petitioner was facing a felony and for failing to advise Petitioner of his right to twelve-member jury. [Docs.1-2 at 22– 23; 19 at 16.] Respondent argues (1) all counsel agreed to a ten-member jury panel, (2) Watson testified it was a purposeful decision made with Petitioner's consent, and (3) Petitioner has no constitutional right to a twelve-member jury panel. [Doc. 13 at 20–22.]

The PCR court addressed Watson's failure to adequately advise Petitioner regarding the ten-member jury panel under the standard set forth in *Strickland*. [App. 514– 515.] The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel should have objected to a ten (10) member jury panel. The Applicant has failed to present any legal justification for his argument that [t]his was improper. *See e.g. Fowler v. Leeke*, 509 F.Supp. 544, 550 (D.S.C. 1979) (noting South Carolina courts utilized six (6) person juries for many years and that there is no Constitutional requirement for a twelve (12) person jury). Further, trial counsel testified he discussed the issue with the Applicant and that they both agreed to go forward with this jury.

[App. 518.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court

precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The PCR court accurately described Watson's representations to the PCR court that he and Petitioner discussed whether they should proceed with a ten-member jury panel. Watson stated, "it was a decision between my client and me as to the nature of the jurors that were selected to go forward." [App. 475.] The PCR court found Watson's testimony to be credible [Doc. 51-17 at 7], and that credibility determination is entitled to deference, *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) (for a federal habeas court to overturn a state court's credibility judgment, the state court's error must be stark and clear); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). The PCR court had no basis to conclude Watson provided ineffective assistance of counsel for proceeding to trial with a ten-member jury panel or for failing to consult with Petitioner regarding his rights. Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

***Ground Three: Trial counsel was ineffective for failing to request that the trial judge recuse himself.***

In Ground Three, Petitioner argues Watson was ineffective for failing to request that the trial judge recuse himself from the proceedings after he had demonstrated bias. [Doc. 1-2 at 22–23.] Respondent argues (1) Petitioner has shown no evidence of bias and (2) Petitioner cannot show prejudice under *Strickland*. [Doc. 13 at 23–24.]

The PCR court addressed Watson's performance with regard to failing to request that the trial judge recuse himself under the standard set forth in *Strickland*. [App. 514–515.] The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel should have moved for the trial judge to recuse himself. During the suppression hearing, the trial judge said the following in discussing his ruling on a suppression issue in a previous case: "And I worried when I left whether or not I was going to get pulled going back to North Myrtle Beach because I ruled against the officers in that." This Court finds the trial judge's comment was innocuous and did not merit a motion for recusal. This is especially true because the comment was made outside the presence of the jury.

[App. 519 (citation omitted).] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Further, while Watson testified at the PCR hearing that he would have requested the trial judge's recusal if he had heard his statements [App. 479], Petitioner has failed to

37

demonstrate the PCR court's decision was an unreasonable application of Supreme Court precedent.  *See Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984) (holding that for a judge's bias and prejudice to be disqualifying, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case" and that the "nature of the bias must be personal rather than judicial.") Petitioner has failed to make such a showing and, therefore, has not shown that Watson was ineffective for failing to request recusal.  Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

### Ground Five: Trial counsel failed to object to the chain of custody

In Ground Five, Petitioner argues Watson failed to object to the defective chain of custody presented by the State regarding the cocaine taken from the scene of the traffic stop.  [Doc. 1-2 at 25.]  Respondent argues this issue was not raised to the PCR court because Petitioner raised this ground in an invalid pro-se amended PCR application.  [Doc. 29 at 2.]  Respondent maintains that grounds alleged in the pro-se amended PCR application were not properly before the PCR court because at the time Petitioner filed the pro-se amended PCR application, he was represented by counsel.  Therefore, Respondent argues, the amendment was invalid because "there is no right to 'hybrid representation' that is partially pro se and partially by counsel" and such documents "are not to be accepted unless submitted by counsel."  [*Id. (*quoting *Miller v. State*, 697 S.E.2d 907 (S.C. 1989)).] *See Atkins v. Moore*, 139 F.3d 887, at *4 (1998) (unpublished table decisions) (holding that because a petitioner presented his claim to the state court, the claim was exhausted and could be treated as defaulted "only if the state court actually relied on a state procedural

38

rule in denying relief."). However, the Court finds this ground was raised to and addressed by the PCR court. [App. 517.] Accordingly, it is subject to review by this Court. Accordingly, the Court will address the merits of Ground Five. Petitioner asserts Watson objected to the evidence itself but not the chain of custody. [*Id.*] Respondent argues (1) counsel repeatedly questioned the witnesses with respect to the evidence taken during the traffic stop, (2) there is neither evidence to support that the chain of custody was defective nor that counsel failed to object to it, and (3) any weak link in the chain of custody goes to credibility not admissibility. [Doc. 13 at 27.]

The PCR court addressed Watson's alleged failure to object to the chain of custody under the standard set forth in *Strickland*. [App. 514–515.] The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel did not adequately challenge the chain of custody. Counsel made a thorough and well-reasoned argument at trial against the admissibility of the drug evidence. Trial counsel argued both that the nature of the drug evidence at trial was different from the evidence seized and that an essential chain witness had been produced. This Court notes that proof of chain of custody need not negate all possibility of tampering but must establish a complete chain of evidence as far as practicable. *See State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001). If there is a weak link in the chain of custody, the question ss only one of credibility and not admissibility. *See State v. Horton*, 359 S.C. 555, 568, 598 S.E.2d 279, 286 (Ct. App. 2004). Counsel properly presented the issue of a defective chain of custody at trial and thoroughly cross examined State witness about perceived discrepancies in nature and appearance of drug evidence. The Applicant has failed to articulate what else trial counsel could have presented in furtherance of his argument.

[App. 517–518 (citation omitted).] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is

39

the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Further, the record supports the PCR court's ruling, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland.*  At the PCR hearing, Watson was asked about the chain of custody issues.  He listed the various reasons he believed the chain of custody had not been established.  [App. 481.]  When asked whether he made these arguments to the trial judge, Watson responded, "yes."  [*Id.*]  Watson was then questioned as to whether he would have made any additional arguments concerning the chain of custody and Watson stated that he would not.  [App. 482.]  A review of the trial transcript also supports the PCR court's decision.  Throughout the trial, Watson continued to object to and question the chain of custody issue.  [*See e.g.* App. 184, 213, 219, 221, 262, 281.]  Accordingly, the PCR court had no basis to conclude Watson provided ineffective assistance of counsel for failing to object to the chain of custody.  Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

> ### Ground Six: Trial counsel was ineffective for failing to object to the trial judge's ruling that Petitioner could be asked questions related to another person's criminal history if Petitioner took the stand in his own defense.

In Ground Six, Petitioner argues Watson was ineffective for failing to object to the ruling that the solicitor would be able to ask questions related to an unknown third party's criminal history if Petitioner took the stand in his own defense.  [Doc. 1-2 at 26.] Respondent contends this ground has not been exhausted because the question presented

to and ruled upon by the PCR court differs from the issue presented in Petitioner's habeas petition. [Doc. 13 at 28.]  After review, in light of the requirement to liberally construe a pro se litigant's pleadings, the Court finds the claims raised by Petitioner are substantially similar and will address the merits of the claim.  Petitioner contends this information would have prejudiced the jury against him and, as a result, he was prevented from testifying. [*Id.*]  Respondent asserts (1) Petitioner knowingly waived his right to testify on the record and (2) Watson testified that the decision for Petitioner to waive testifying was based on a number of factors, including counsel's desire to preserve the right to the last argument. [Doc. 13 at 29.]

The PCR court addressed Watson's failure to adequately object to the PCR court's ruling allowing Petitioner to be questioned on a third party's criminal history under the standard set forth in *Strickland*.  [App. 514–515.] The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel misadvised him regarding his prior criminal history.  Trial counsel stated he discussed the matter with the Applicant and that he wanted to make a strategic decision to have the final argument before the jury.  *See Roseboro v. State*, 317 S.C. 292, 294, 454 S.E..2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel).  Further, the trial judge fully explained the right to testify and the Applicant stated he wanted to waive that right.

[App. 518–519 (citation omitted).] the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary not an unreasonable application of Supreme Court precedent.  Further, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.   Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a

41

decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Further, the record supports the ruling of the PCR court. First, Petitioner was informed of his right to testify and that he voluntarily waived that right. The record includes a lengthy discussion of Petitioner's right to testify. [App. 317–319.] At the conclusion of his explanation, the PCR judge asked Petitioner if wanted to relinquish his right to testify and Petitioner responded, "yes, sir." [App. 519.] Additionally, Watson articulated a valid trial strategy for not having Petitioner testify. At the PCR hearing, Watson testified that he was "concerned about a number of things" when advising Petitioner whether to testify in his own defense. [App. 476.] Specifically, Watson wanted to "have the last argument." [*Id.*] Accordingly, the PCR court had no basis to conclude Watson provided ineffective assistance of counsel for failing to object to the PCR court's ruling that Petitioner would be asked questions regarding a third party's criminal history if he took the stand. *See Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) ("The Supreme Court has recognized that strategies devised after extensively investigating the law and facts relevant to any and all probable options are virtually unchallengeable. A reviewing court may not permit the benefit of hindsight to impact its review." (internal citation omitted)). Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

### *Ground Seven: Trial counsel failed to challenge the underlying traffic stop*

In Ground Seven, Petitioner argues Watson was ineffective for failing to challenge the underlying traffic stop because it was pretextual.  [Doc. 1-2 at 28.]  Petitioner further contends that  the testimony proffered at trial did not establish the reasonable suspicion required to pull over Petitioner because the fact that Petitioner "somewhat swerved" does not violate state law.  [Doc. 19 at 41.]  Respondent argues (1) the evidence that Petitioner swerved was a sound basis for the traffic stop and (2) the testimony supports the stop. [Doc. 13 at 31.]

The PCR court addressed Watson's alleged failure challenge the traffic stop under the standard set forth in *Strickland*.  [App. 514–515.]  The PCR court found,

> the Applicant failed to meet his burden of proving trial counsel did not adequately challenge the unreasonableness of the underlying traffic stop.  Trial counsel testified that, while challenged the unreasonableness of the search and seizure pursuant to the traffic stop, there was no basis to challenge the legitimacy of the stop itself.  This Court has examined the trial testimony and agrees with trial counsel's conclusion.  It is noted that the Applicant failed to articulate how the officer's observation that his car "somewhat swerved" between lanes did not yield probable cause to stop his vehicle.

[App. 518 (citation omitted).]  The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.   Second,  the record fails  to  demonstrate  the  PCR  court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Further, the record supports the PCR court's ruling.  It is uncontested that Watson did not question the underlying traffic stop.  [App. 493.]  However, police may stop a vehicle if they have a reasonable suspicion that even a minor traffic offense has occurred.  *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993); *see also Whren v. United States,* 517 U.S. 806, 819 (1996). This is true even when police use the traffic violation merely as a pretext because they suspect the driver of other crimes.  *Whren v. United States*, 517 U.S. 806 (1996).   Officer David Lane testified that he observed that Petitioner's vehicle "somewhat swerved, [ . . . ] the vehicle actually entered into the other lane, the inside lane, and then went back into the outside lane.  We have a lot of problems on the interstate with people who are sleepy, who've been drinking, and for safety reasons, not to mention the fact that [Petitioner and co-defendant] had broken the law, because you are supposed to maintain that lane that you're traveling in."  [App. 173–174.]  The officer was able to articulate a valid reason for the stop; accordingly, the PCR court had no basis to conclude Watson provided ineffective assistance of counsel for failing to object to the initial traffic stop.  Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

### Ground Eight: Prosecutorial Misconduct

In Ground Eight, Petitioner argues the state prosecutor used false evidence and a false criminal history to keep Petitioner from taking the stand in his own defense.  [Doc. 1-2 at 29.]  Further, Petitioner contends the prosecutor did not turn over evidence in a timely manner and knowingly made false statements in front of the jury.  [*Id.*]  Petitioner also maintains that the prosecutor used the seized drug evidence after Officer Lane admitted it was the same evidence that he removed from the car during the traffic stop.  [*Id.*]

44

Respondent argues this issue was not raised to the PCR court because Petitioner raised this ground in an invalid pro-se amended PCR application. [Doc. 29 at 2.] Respondent maintains that grounds alleged in the pro-se amended PCR application were not properly before the PCR court because at the time Petitioner filed the pro-se amended PCR application, he was represented by counsel. Therefore, Respondent argues, the amendment was invalid because "there is no right to 'hybrid representation' that is partially pro se and partially by counsel" and such documents "are not to be accepted unless submitted by counsel." [*Id. (*quoting *Miller v. State*, 697 S.E.2d 907 (S.C. 1989)).] *See Atkins v. Moore*, 139 F.3d 887, at *4 (1998) (unpublished table decisions) (holding that because a petitioner presented his claim to the state court, the claim was exhausted and could be treated as defaulted "only if the state court actually relied on a state procedural rule in denying relief."). However, the Court finds this ground was raised to and addressed by the PCR court. [App. 517.] Accordingly, it is subject to review by this Court. Accordingly, the Court will address the merits of Ground Eight. Respondent argues (1) Petitioner did not take the stand and so he was not questioned regarding the third party's criminal history in front of the jury, (2) Watson testified that other factors were considered in the decision for Petitioner not to testify, including the fact that counsel wanted to reserve the right to the last argument, and (3) Officer Lane testified that he found two large bags which does not contradict that SLED found smaller bags inside of the large sealed bags. [Doc. 13 at 32–33.]

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Supreme Court has observed, "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.*

Here, the PCR court found,

> [w]hile there has been testimony that the discovery process was on-going in this case, this court finds the Applicant has failed to meet his burden of proving there was actual prosecutorial misconduct. *See Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989) (finding the burden is on the defendant to prove actual vindictiveness). Also, the Applicant failed to prove the State's amendment of the indictment was a vindictive action. *See id.*

[App. 517.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of Supreme Court precedent. With respect to the alleged *Brady* violation, the Due Process Clause requires the State to disclose exculpatory evidence to the defense. *See Brady*, 373 U.S. at 87. To prove a *Brady* violation, Petitioner must demonstrate that evidence was (1) favorable to him; (2) in the possession of or known by the prosecution, but nevertheless suppressed by the State; and (3) material to his guilt or innocence or was impeaching. *E.g., Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). Here, Petitioner has failed to demonstrate that any such evidence existed or that it was not provided to him or Watson. At the PCR hearing, Watson stated that he had been able to review all of the State's discovery with his client. [App. 471.] Accordingly, the PCR court's conclusion that there had been no prosecutorial misconduct in the handling of the discovery for this case is supported by evidence.

Regarding Petitioner's assertion that the prosecutor knew the evidence presented at trial was not the same evidence taken during the traffic stop, the record shows that the nature of the evidence was contested issue throughout the trial. [*See e.g.* App. 184, 213, 219, 221, 262, 281.] Additionally, Petitioner has failed to show that the prosecutor knew that the evidence was not what he claimed it was. Accordingly, the PCR court's ruling that Petitioner did not meet his burden of proving prosecutorial misconduct is supported by evidence.

With respect to Petitioner's claim that the prosecutor knowingly used false information to prevent Petitioner from testifying, the record demonstrates that the decision that Petitioner would not testify was a strategic choice based on the consideration of multiple factors. Watson stated that he "was concerned about a number of things" with regard to Petitioner taking the stand. [App. 476.] Watson expressed that the right to the last argument was also an important consideration and that he discussed the decision with Petitioner. [*Id.*] Further, Watson could not say for sure that the criminal report would have come in even if Petitioner had testified. When asked whether the Florida convictions would have come in against Petitioner if he had testified, Watson stated that he "could not answer that with any clarity . . . ." [App. 483.] Accordingly, the PCR court's ruling is supported by evidence. Thus, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

47

<u>S/Jacquelyn D. Austin</u>

United States Magistrate Judge

December 22, 2014

Greenville, South Carolina